NAFTZGER ET AL. v. THE STATE OF OHIO.

*Eminent domain—Fair market value of land ascertained, how
—Evidence—Actual sales of other lands and prices paid
therefor, competent, when—Sales of other property to ap-
propriator incompetent, when.*

1. In appropriation proceedings, evidence of actual sales of
   other lands and prices for which they were sold is com-
   petent, if they are similar in their situation, relative
   position, and other circumstances relating to value, and
   such sales are fair and open in the market.
2. Sales of other property to the condemning party, being
   affected by an element which does not enter into similar
   transactions made in the ordinary course of business, are
   not competent.

(Decided February 15, 1927.)

ERROR: Court of Appeals for Wayne county.

*Messrs. Weiser & Weimer* and *Mr. J. O. Fritz,*
for plaintiffs in error.
*Mr. W. E. Benoy, Mr. W. E. Weygandt* and *Mr.
Daniel C. Funk,* for defendant in error.

WASHBURN, P. J.   This proceeding in this court
involves the review of a judgment entered by the
probate court of Wayne county in an action brought
by the state of Ohio to appropriate the property of
the defendants for the establishment of a public in-
stitution of the state.

The sole question for determination by the jury
was the fair market value of the property taken.

We have carefully read and considered the rec-
ord showing the proceedings of the trial court, and
we find that the court erred in charging the jury

that the compensation due to the defendant was the "fair cash market value" of the land taken and in admitting testimony of its cash market value. The rule is the fair market value; not what the land would bring upon a sale in the open market, either for cash or on long time payments, but in a sale in the usual manner, when offered for sale by one who desires, but is not obliged, to sell, and bought by one who is under no necessity of having it.

The trial court also erred in permitting the state, in rebuttal, to contradict the evidence given by the witness Naftzger, on cross-examination, in reference to a matter which was clearly collateral.

We find also that the court erred in permitting the state to ask witnesses for the defendants, on cross-examination, if they did not know that within the past year a large number of farms in the vicinity of the defendants' land had been sold at "an average price of $116 an acre." The average price obtained in sales in that vicinity is not a true criterion by which to ascertain the fair market value of a particular piece of property; one farm may sell low and another high, and the average selling price of the two is not the price of either, and is no criterion by which to fix the value of another and different farm; an average price cannot be applied to any particular farm; hence there is no basis for comparison; and, furthermore, by including only certain farms in the calculation, the average price can be raised or lowered by the manipulation of either party.

These errors, when considered separately, while of more or less importance, might not be found to be prejudicial under certain circumstances, but, when considered together, and in connection with

other errors shown in this record, they are sub-
stantial, and may well be found to be prejudicial.

The other error which we find in the record is in
reference to the evidence which was introduced by
the state in the cross-examination of the defend-
ants' witnesses as to the purchases made by the
state, shortly before the trial of this case, of a
large number of farms adjoining, and in the vicin-
ity of, the defendants' farm.

By the great weight of authority, when the value
of land is in issue, evidence of actual sales of other
lands, and prices for which they were sold, is com-
petent, if they are similar in their situation, rela-
tive position, and other circumstances relating to
value, and such sales are fair and open in the mar-
ket.

However, sales by sheriffs and sales that are in
the nature of a compromise, or are affected by an
element which does not enter into similar transac-
tions made in the ordinary course of business, not
being a fair criterion of value, are not admissible
in evidence.

What the party condemning has paid for other
property is generally held to be incompetent. In
most such cases the party "must have the partic-
ular property, even if it costs more than its true
value. The fear of one party or the other to take
the risk of legal proceedings ordinarily results in
the one party paying more or the other taking less
than is considered to be the fair market value of
the property. For these reasons such sales would
not seem to be competent evidence of value in any
case, whether in a proceeding by the same con-
demning party or otherwise." 2 Lewis on Emi-
nent Domain (3d Ed.), Section 667.

Authorities in support of the foregoing proposition are cited by above author, showing that such rule obtains in most of the jurisdictions in this country. That such evidence was incompetent seems to have been recognized by the state in the presentation of its case in chief, but early in the presentation of the defendants' case the state in cross-examination of the defendants' witnesses referred to said sales. It was error for the attorney for the state to include in his question the price obtained in the sale inquired of.

It happened that many of the witnesses for the defendants knew of such sales, and, if such sales were competent, the error above referred to in the form of the question might be obviated; but, as the matter was presented, as shown by the record in this case, evidence of such sales was not competent.

The record discloses that counsel for the defendants made the following objection:

"We object to this cross-examination. We move that it be stricken out and taken from the jury because sales to the state of Ohio were not made in the market where the parties were free to act."

Similar objection was frequently made during the trial, and exceptions in each instance were noted. There is some evidence in the record that some of such sales were made to the state because the parties selling "practically had to," and in several instances, when the defendants offered to prove that such sales were not freely made in the ordinary course of business, but that the sellers were influenced to compromise on the price by pressure of public bodies and individuals interested in the securing of the location of the institution in

Wayne county, and because of the fear of taking the risk of legal proceedings, the court refused to admit such evidence.

There was no evidence offered on behalf of the state tending in any way to indicate that such sales were fair and open, and made by an owner desiring to sell, but not being obliged to sell, to a purchaser who was under no necessity of having that partic-ular property.

There were not many sales in that vicinity outside of those made to the state, and the incompetent evidence in reference to such sales forms such a large part of the record, and is made so prominent therein, as to preclude us from finding that the verdict of the jury was not influenced thereby.

Counsel for the defendants requested the court to charge the jury as follows:

"Upon the cross-examination of the defendants' witnesses counsel for the state were permitted to inquire the price at which lands adjoining the Naftzger lands were purchased by the state as a part of the site for an institution. You are instructed that I now withdraw from your consideration all of said testimony relative to the price for which the state purchased other lands. You are totally to disregard such testimony. You are instructed not to rely upon it as criterion or guide in determining the value of the lands in suit. You will be guided solely by other testimony, excluding the testimony herein referred to altogether from your consideration."

During the trial the court's attention was frequently called to the error of its ruling on this evidence, and by such request the court was asked to

change its ruling and correct its error, and that request was refused and a proper exception noted. It may be that the jury arrived at the fair market value in this case, but we cannot be reasonably sure of that fact, and some of the errors are so fundamental and important as to require a reversal of the case.

For the errors stated, the judgment of the probate court is reversed, and the cause remanded for further proceedings according to law.

*Judgment reversed.*

FUNK and PARDEE, JJ., concur.